## Oscar Helbig v. Henry Slaughter.

1. LANDLORD AND TENANT—*Release of the Landlord's Obligation to the Public.*—A landlord is under obligations to the public to maintain leased property in a safe and good condition and he can not release himself from such obligation by stipulating in leases with his tenants charging them with responsibility for all damages by reason of personal injuries to third persons during their occupancy.

2. MASTER AND SERVANT—*Duty of the Servant upon Discovering the Dangerous Condition of the Place Furnished for His Use.*—It is the duty of a servant upon discovering the dangerous condition of the place or thing furnished for his use to report it to the master for repairs, and to cease the use of it until it is restored to a reasonably safe condition.

3. INSTRUCTIONS—*When the Evidence is Conflicting.*—In a case where the evidence on the material questions at issue is conflicting the instructions should be accurate.

**Trespass on the Case,** for personal injuries. Appeal from the Circuit Court of McLean County; the Hon. COLOSTIN D. MYERS, Judge, presiding. Heard in this court at the May term, 1900. Reversed and remanded. Opinion filed June 10, 1901.

CHAS. M. PEIRCE, attorney for appellant.

YOUNG & POTTER, attorneys for appellee.

MR. JUSTICE WRIGHT delivered the opinion of the court.

Appellant was the owner of a three-story building in the business district of the city of Bloomington; and where the front door of the ground floor opened upon the public sidewalk a double iron covering to a coal hole was placed, connecting the sidewalk with the entrance door. September 4, 1899, appellee went out of the door, stepped upon one side of the iron covering and was precipitated to the ground below, a distance of about ten feet, where the injuries complained of were received. The declaration counts further upon the allegation that appellant was in possession of the premises; that it was his duty to keep the covering safe and protect the opening, in which he was negligent; and that appellant was in the exercise of ordinary care for his own safety when injured. Upon a trial by jury a verdict

and judgment for $1,000 was rendered against appellant, which by this appeal it is sought to reverse.

The evidence discloses that in December, 1898, one J. T. Adams leased the ground, or first floor of the premises and from then on occupied it with a music supply store, while appellant occupied the remainder of the building. In the lease are certain stipulations by which Adams is charged with responsibility for all damage from any cause during his occupancy and to keep the premises in as good repair as at the date of the lease. It appears that appellee was permitted by Adams to sleep in the store in part for his services in helping to move pianos. Appellee had been in and about the place for several months and there is evidence of several witnesses that he knew the iron plate was loose and out of repair. He denies this, however, and on the issue of his use of ordinary care for his own safety, the evidence is conflicting.

An effort is made to construe appellee's presence in the store into a sub-tenancy and to carry over to him the effect of the stipulations of the Adams lease. This we can not concede. Slaughter is too far removed from that transaction and even if such stipulations were held to operate in the case in any manner we do not believe they could be held to apply to him. But we are of the opinion that appellant's contention relative to the release from any liability under the terms of the lease is without force. It was his obligation to the public and others who might lawfully use the entrance to the building, to maintain the property safe and in good condition for that purpose from which he could not have release in this manner; if the stipulations of this lease apply to the entrance from the sidewalk it is no more than a contract of indemnity to appellant and can have no effect upon his general relations and duties as the owner of the building. It was but personal between the landlord and tenant. More than that, however, it is extremely doubtful if, under a proper construction of the stipulations referred to, they could be found applicable to the coal hole in controversy, and appellant's instructions along that line were

properly refused; and for the further reason that such instructions ignore the question whether appellant, being in possession of a part of the building, did not have as much control of the coal hole and sidewalk as the lessee, on appellant's theory of the effect of the lease.

Appellant requested the court to submit six special interrogatories to be answered by the jury on questions of fact together with the general verdict. Five were so submitted, by which the jury found that appellant was the owner and in possession of the premises when the injury occurred; that the iron covering in controversy was in a dangerous condition at the execution of Adams' lease; that appellant knew of its dangerous condition September 4, 1899; that appellee was in the exercise of ordinary care for his own safety; and that he knew the dangerous condition of the premises prior to his injury. The special interrogatory refused was, " could the plaintiff by the exercise of care, with a knowledge of the condition of the walk, have avoided the injury complained of ? " The special findings, except those relative to appellee's knowledge of the dangerous condition of the premises, and his use of ordinary care, to be hereafter considered, are in harmony with the general verdict under the evidence. It is difficult to see how an answer favorable to appellant on the interrogatory refused by the court could be inconsistent with the general verdict as rendered. The question is entirely speculative under the broad and unqualified expression " care ; " which might be much or little, or might be reasonable, due or ordinary care; and the court would have no means of determining which, if either, the jury contemplated in a finding upon the point. Besides, the interrogatory assumes knowledge of the condition of the walk without submitting that question to the jury. We therefore believe no error was committed in refusing to give this interrogatory.

Although many complaints are made relative to the ruling of the court upon the admission and rejection of evidence, upon examination we fail to find any prejudicial error in those respects, and upon the whole evidence we find that

it fairly sustains the charge of negligence against appellant, and unless, therefore, it can be said upon the whole evidence that appellee was not in the exercise of ordinary care in going upon the defective cover, or was guilty of contributory negligence in his relation to his master, Adams, whose servant he was, in the use of the premises where he received his injury, the verdict must be considered as sustained by the evidence. The most, if not all, that can be said against the verdict upon this point is, that appellee knew of the dangerous condition of the walk between the public sidewalk and the entrance door of the building before the accident occurred. At any rate, for our present purpose, the special finding of the jury so determines the fact, which also finds appellee was in the exercise of ordinary care. Are these findings consistent? Appellee was but the servant of Adams while in the use of the premises. Adams was under obligation to appellant to keep the premises in repair, and while, as we have already said, appellant, as owner of the property, could not release himself from liability by delegation to Adams, yet the servants of Adams owed to him, as the vice-principal of appellant, in respect to the care of the premises, the ordinary duties of servant to master relative to the use of premises or property by the servant, while in the master's service. It is the duty of a servant upon discovering the defective or dangerous condition of the place or thing furnished for his use to report it to the master for repair, and to cease the use thereof until it is restored to a reasonably safe condition. C. & A. R. R. Co. v. Cullen, 87 Ill. App. 377; same case, 187 Ill. 527. This, of course, is a familiar rule in the law of negligence as between master and servant. The place where the accident occurred was not a public street, but a mere private way for the use of appellant's building. Much of the argument, and many authorities cited by counsel, have reference to a public street or sidewalk in the use of the public. In such cases the injured person is charged with no duty to report to the public authorities dangers or defects discovered by him. In the case presented, however, appellee omitted, or at least

there is not sufficient evidence that he made report of the dangerous condition of the walk, and he therefore assumed the hazard. Adams testified that appellee told him after the accident, that he had previously told Helbig about the dangerous condition of the walk, and Adams chided appellee for not telling him about it. If such evidence was sufficient upon which to conclude that appellee had reported to Helbig, there is no evidence that the latter promised or intended to repair, and it is clear appellee used the premises as he did before, and thus assumed the hazard. We are constrained to conclude that the special finding of the jury that appellee knew of the dangerous condition of the walk prior to September 4, 1899, is inconsistent with the special finding that he was in the exercise of ordinary care, as well as the general verdict, and for such reason the verdict and special findings should be set aside and a new trial ordered.

Complaints have been made of the instructions in the case, both given and refused, and inasmuch as we shall remand the cause for a new trial, it may be of use hereafter that we express our views concerning a few of the points relative to the instructions. In the third instruction given for the plaintiff the court told the jury that mere knowledge that premises are in an unsafe condition does not necessarily impute lack of ordinary care in their use, and Village of Clayton v. Brooks, 150 Ill. 97, and other like cases are cited in support of it. This and other cases, and the weight of all the authorities cited in support, refer to the use of public streets, where no duty was laid upon the person injured to report such knowledge, and there may be no doubt such an instruction in such cases would not be misleading; yet the general rule in all the authorities adopted and followed in this State is that what is or is not negligence is a question of fact. An instruction is properly refused which tells the jury, as a matter of law, that certain facts *per se* constitute negligence. Village of Clayton v. Brooks, *supra*.

We think the instruction was, as applied to the situation of the parties in this case, misleading; for as we have already seen, if the plaintiff had such knowledge, it was his duty to

report the unsafe condition of the premises to the master, and his failure in that respect would be to assume the extra hazard. In all other respects we think the instructions given to the jury by the court at the instance of the plaintiff were accurate. Complaint is made of the refusal by the court of many instructions requested by the defendant. Upon examination we find nearly all the refused instructions, urged upon our attention, are covered by those given by the court. At any rate all that was proper in them was so given. It is specially insisted the court erred in refusing the fifteenth refused instruction, to the effect that if plaintiff knew of the unsafe condition of the walk or plate and could have gone another way, then it was the duty of plaintiff to go the other way, and thereby avoid the possibility of any injury. This instruction had no proper application to the facts and was properly refused. There was but one front door, although double, with two plates, but it constituted but one way—and not two. There was no other way to leave or enter the building from the street sidewalk.

For the errors indicated the judgment of the Circuit Court will be reversed and the cause remanded for a new trial. Reversed and remanded.